UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRUCE WHITEHEAD,

        Plaintiff,

v.                                 Case No:  2:12-cv-197-FtM-29DNF

ANGEL GARRIDO, JACQUES LAMOUR,
HUBERT SMART, HOWARD EASTER and
E. WALKER,

        Defendants.
_____/

## OPINION AND ORDER

This matter comes before the Court upon review of Defendant Dr. Angel Garrido's motion to dismiss Plaintiff's amended complaint (Doc. 45, filed September 24, 2013). Plaintiff Bruce Whitehead ("Plaintiff") initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1).[1]  Due to

---

[1] Plaintiff is civilly detained at the Florida Civil Commitment Center ("FCCC") pursuant to Florida's Involuntary Civil Commitment of Sexually Violent Predator's Act and is proceeding *pro se*. The Florida legislature enacted the Sexually Violent Predators Act, Fla. Stat. §§ 394.910-.913, by which a person determined to be a sexually violent predator is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2).  The Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So. 2d 93, 112 (Fla. 2002); Kansas v. Hendricks, 521 U.S. 346 (1997) (holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive). Civil commitment under the Act involves several steps.  First, the Act requires a mental evaluation of any person who has committed a

numerous pleading deficiencies in his complaint, Plaintiff was ordered to file an amended complaint (Doc. 14). Plaintiff's amended complaint is currently before the Court (Doc. 17).

In his motion to dismiss Plaintiff's amended complaint, Defendant Garrido asserts that Plaintiff's scant allegations against him do not state an Eighth Amendment violation (Doc. 45 at 5). Plaintiff filed a response to the motion to dismiss (Doc. 56). The motion is now ripe for review.

For the reasons set forth in this Order, Defendant Garrido's motion to dismiss is **GRANTED.**

I. **Complaint**

In his amended complaint, Plaintiff sues defendants Dr. Angel Garrido, Dr. Jacques Lamour, Hubert Smart, Howard Easter, and Earl Walker (Doc. 17). All of Plaintiff's allegations in his amended

---

sexually violent offense and is scheduled for release from prison or involuntary confinement. See Fla. Stat. § 394.913. The evaluation is conducted by a multi-disciplinary team of mental health professionals who must determine whether the individual meets the definition of a "sexually violent predator." After the evaluation, the state attorney may file a petition with the circuit court alleging that the individual is a sexually violent predator subject to civil commitment under the Act. Id. If the judge determines the existence of probable cause that the individual is a sexually violent predator, then he or she will order the individual to remain in custody. Id. at § 394.915. Thereafter, a jury trial, or a bench trial if neither party requests a jury trial, will commence. Id. If the jury finds the individual to be a sexually violent predator by clear and convincing evidence, then the individual will be committed to the custody of the Department of Children and Family Services for "control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Id. at § 394.917.

2

complaint involve events that occurred on, or around, March 12, 2009. Specifically, Plaintiff asserts that each defendant in this action knew, "or should have known by review of Plaintiff's Clinical File" that he suffers from Post-Traumatic Stress Disorder and Borderline Personality Disorder (Doc. 17 at ¶ 3). Plaintiff alleges that on March 12, 2009, he was on suicide watch status which involved confinement in an 8.5 foot by 5.5 foot cell. Plaintiff asserts that his psychiatrist, Defendant Garrido, ordered that Plaintiff was allowed to leave the cell for bathroom breaks only, and then only when escorted by three security guards (Doc. 17 at ¶ 4; Doc. 17-4 at 2, 3).

On March 12, 2009, Plaintiff told Defendant Walker that he needed to use the restroom. Plaintiff was escorted to the restroom by Defendant Walker, Defendant Easter, and Defendant Smart (Doc. 17 at ¶ 5). While in the restroom, Plaintiff broke a towel rack from the wall, smashed a glass mirror, held a portion of the broken mirror to his throat, and threatened to cut himself if not taken outside for fresh air and a smoking break (Doc. 17 at ¶ 5). Plaintiff was escorted outside, and after smoking approximately half a cigarette, he dropped the broken mirror to the sidewalk (Doc. 17 at ¶ 5). Defendant Smart approached Plaintiff who "assertively requested Defendant Smart to respect him and that he be given his personal space." (Doc. 17 at 8). Defendants Smart and Easter then walked towards Plaintiff "in an

aggressive and threatening manner." (Doc. 18 at ¶ 6). Plaintiff ran away and was pursued by Defendants Smart and Easter (Doc. 17 at ¶ 6). Defendants Smart and Easter forcibly subdued Plaintiff which resulted in a fracture to Plaintiff's right hip (Doc. 17 at ¶ 7). No medical personnel were called to assist or to evaluate Plaintiff at that time (Doc. 17 at ¶ 7).

Subsequent to his altercation with Defendants Smart and Easter, Defendant Lamour examined Plaintiff and ordered that he be taken to a hospital (Doc. 17 at ¶ 9). He was taken to DeSoto Memorial Hospital on the same day (March 12, 2009) (Doc. 17 at ¶ 11). At the hospital, Plaintiff's right hip was x-rayed, and he was told that the only injuries he had received were bruises (Doc. 17 at ¶ 11). The next morning, Plaintiff was returned to his suicide watch isolation cell (Doc. 17 at ¶ 12). On either March 12, 2009 or March 13, 2009, Desoto Memorial Hospital contacted the FCCC to advise of an "acute fracture of the right Ischium and likely the Acetabulum of the Plaintiff's right hip." (Doc. 17 at 13). Defendant Lamour "did not seek emergency medical care until the evening of March 14, 2009[.]" (Doc. 17 at 13). Plaintiff was admitted to the Tampa General Hospital the next day (Doc. 17 at 13).

Plaintiff seeks compensatory damages of $100,000 from each defendant and punitive damages "in amounts to be proven at trial." (Doc. 1 at 11).

Defendant Garrido seeks dismissal of this claim on the grounds that the only allegations against him are that Plaintiff was assigned to suicide watch by Defendant Garrido and that the conditions in the cell were poor (Doc. 45 at 7).

## II. Legal Standards

### *a. Standard of Review*

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in Plaintiff's amended complaint as true and take them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662 (2009) (discussing a Rule 12(b)(6) dismissal); Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the Twombly-Iqbal plausibility standard when reviewing a complaint subject to a motion to dismiss. Randall v. Scott, 610 F.3d 701, 708, n.2 (11th Cir. 2010). A claim is plausible if the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The

plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 556 (2007); Marsh, 268 F.3d at 1036 n.16. Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. Iqbal, 556 U.S. 662, 677. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. (internal modifications omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In making the above determinations under Rule 12(b)(6) or 28 U.S.C. § 1915(g), all factual allegations in the complaint must be viewed as true. Brown v. Johnson, 387 F.3d 1344, 47 (11th Cir. 2004). Moreover, the Court must read the plaintiff's *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972).

### b. *Deliberate Indifference*

Title 42 U.S.C. § 1983 imposes liability on anyone who, acting under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws[.]" To state a claim under § 1983, Plaintiff must allege that: (1) the defendants deprived him of a right secured under the United States Constitution or federal law; and (2) such deprivation occurred

6

under color of state law. <u>Arrington v. Cobb County</u>, 139 F.3d 865, 872 (11th Cir. 1998).

The Eighth Amendment's prohibition against cruel and unusual punishment extends beyond physically barbarous punishment and includes inhumane conditions of confinement. <u>See</u> <u>Ort v. White</u>, 813 F.2d 318, 321 (11th Cir. 1987). There are two essential components to an Eighth Amendment claim brought against an individual: one objective, the other subjective. <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993). First, the alleged deprivation must be objectively serious. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). The second, subjective component of the analysis requires that the caretaker must have had a sufficiently culpable state of mind at the time of the alleged violation. <u>Id.</u> In conditions of confinement cases like this one, the required state of mind is "deliberate indifference" to inmate health or safety. <u>Id.</u>

In defining deliberate indifference in this context, the Supreme Court has determined that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer</u>, 511 U.S. at 847. A plaintiff must also prove that a defendant's disregard of the risk is more than mere negligence. <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004).

## III.    Analysis

Plaintiff appears to attribute liability to Defendant Garrido based upon Garrido's decision to assign Plaintiff to a suicide-watch isolation cell. In his reply to the motion to dismiss, Plaintiff asserts that the cell was a "windowless supply closet which was make-shift converted into a dry cell devoid of toilet and sink and running water." (Doc. 56 at 3). He asserts that he was placed in the cell for two weeks or longer and that he suffered humiliation because the lack of bathroom breaks caused him to "urinate and [defecate] upon himself and the floor," and the conditions worsened his mental state (Doc. 56 at 4).[2]

A review of the documents attached to Plaintiff's complaint indicate that Plaintiff was placed on suicide watch because he threatened self-injury and because he swallowed an unknown object, which Plaintiff told prison officials was a razor blade (Doc. 1-6 at 6, 16). See Grossman v. NationsBank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (a court may consider "the pleadings and exhibits attached thereto" when ruling on a motion to dismiss); Gross v. White, 340 F. App'x 527, 534 (11th Cir. 2009) ("A district court ruling on a motion to dismiss is not required to disregard documents that the plaintiff himself filed with his original

---

[2] The exhibits submitted with Plaintiff's complaint indicate that Defendant Garrido ordered that Plaintiff have bathroom breaks with security only (Doc. 17-4 at 2, 3, 4, 5, 9, 10). The exhibits also indicate that Plaintiff was offered bathroom breaks but refused to go (Doc. 17-4 at 4).

8

complaint."); Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009) (when the exhibits contradict the allegations of a pleading, the exhibits govern).

Plaintiff has not raised a genuine issue of material fact that Defendant Garrido's classification of Plaintiff as suicidal, either initially or through his periodic reviews, constituted an Eighth Amendment violation. See Hewitt v. Helms, 459 U.S. 460, 466 (1983) (no liberty interest in being confined in the general population rather than in the more restrictive atmosphere of administrative confinement); Jones v. Diamond, 594 F.2d 997, 1015 (5th Cir. 1979) (no right exists under the due process clause to a system of prisoner classification).

Likewise, Plaintiff has not stated a claim in his amended complaint that the conditions in the suicide watch cell rose to the level of an Eighth Amendment violation. While Plaintiff found the conditions in the small cell uncomfortable, they do not suggest that Plaintiff was subjected to the unnecessary and wanton infliction of pain, even at a *de minimis* level, that would support an Eighth Amendment violation. Plaintiff's placement and treatment in the suicide observation cell does not amount to cruel and unusual punishment, even if such actions were not for a legitimate purpose. The Court finds that there are no genuine issues of material fact as to Plaintiff's Eighth Amendment claim of unconstitutional conditions of confinement arising from his

placement in a suicide watch isolation cell, and the claim fails as a matter of law.

Plaintiff also asserts that Defendant Garrido is liable for a delay in medical treatment for his fractured hip (Doc. 17 at 10). The Eleventh Circuit has recognized that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997); Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989) ("knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). For the purposes of this Order only, the Court will assume that the one-day lapse between DeSoto Memorial Hospital's alert to the FCCC that Plaintiff had suffered a fracture and Dr. Lamour's provision of emergency medical treatment actually was a delay. However, Plaintiff does not allege that Defendant Garrido was aware of the tardy fracture diagnosis from DeSoto Memorial Hospital or that he was in any way responsible for providing medical care, other than psychiatric care, to Plaintiff. Because Plaintiff has not shown a causal relationship between Defendant Garrido and the delay in his treatment, his claims against Defendant Garrido for delayed treatment are dismissed for failure to state a claim upon which relief may be granted

**IV. <u>Conclusion</u>**

Accordingly, it is hereby **ORDERED**:

1. Defendant Angel Garrido's motion to dismiss (Doc. 45) is **GRANTED**. All claims against Defendant Garrido are dismissed without prejudice for failure to state a claim upon which relief may be granted; and

2. The **Clerk of Court** is directed to terminate this Defendant from this action and to enter judgment in his favor.

**DONE** and **ORDERED** in Fort Myers, Florida, this   11th   day of December, 2013.

                                      */s/ John E. Steele*
                                      JOHN E. STEELE
                                      UNITED STATES DISTRICT JUDGE

SA: OrlP-4  12/11/13
Copies to:  All parties of record